# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURA KELLY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17 C 5491 |
| INTERNATIONAL SERVICES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Laura Kelly sued her former employer, International Services, Inc., for sex discrimination under Title VII. In her first amended complaint, Kelly alleges disparate treatment (count 1) and retaliation (counts 2 and 3). ISI has moved for summary judgment. For the reasons stated below, the Court grants the motion.

## Background

The following facts are undisputed unless otherwise indicated. Laura Kelly worked at International Services, Inc. (ISI) from 2001 to 2017. At all relevant times, she served as a senior project manager with the company. ISI provides business consulting services to small- and mid-sized companies, and senior project managers travel to deliver on-site services to clients. On a handful of occasions in 2014 and 2015, Kelly also filled in as a consulting services director. In contrast with senior project managers who travel to clients, consulting services directors are office-based employees who remotely supervise those working on site.

In January 2016, Kelly filed a charge with the EEOC alleging she had been bypassed twice for a permanent appointment to the consulting services director position because of her gender. Then, on June 8, 2016, she settled with ISI. The written agreement "irrevocably and unconditionally released" the claims underlying the EEOC charge and prohibited Kelly from using the facts underlying those claims as part of "any future claim or cause of action." Def.'s Rule 56.1 Stat. ¶¶ 4.1-4.2.

In September 2016, Kelly filed another EEOC charge. She alleged that she was denied a promotion after the prior settlement on the basis of her sex and in retaliation for earlier EEOC charge. ISI had filled three consulting services director positions with male candidates between June, when Kelly settled the prior claim, and September 2016. Kelly alleges that the men were less qualified than her. She also alleges that she was given less favorable work opportunities than male peers, which caused her to appear less qualified for the director role than she actually was. ISI asserts that each of the directors appointed between June and September had unique characteristics that made them strong candidates for the director position. It also contends that Kelly never actually asked for a promotion to the director position between June and September 2016. Finally, it asserts that all consulting job assignments are based primarily on an objective formula that does not consider improper factors like gender.

Kelly was fired on March 3, 2017. ISI asserts that she was fired not for having pressed the EEOC charges or because of her gender, but rather for flagrantly violating its zero-tolerance sexual harassment policy the evening before she was terminated.

Specifically, three ISI employees—Michael Chung, Chris Lenius, and Ryan Johnson[1]—each accused Kelly of some combination of touching, groping, and flashing them without their consent during a company banquet. ISI's executive director of human resources, James Gibson, investigated the allegations and ultimately recommended that ISI's owner and managing director John Burgess terminate Kelly. Burgess accepted the recommendation.

Kelly contends that her termination was retaliatory. She asserts that her accusers conspired to fabricate the sexual harassment allegations that led to her firing. The motive, Kelly alleges, was that ISI and its employees wanted to get back at her for speaking out about the discrimination she faced during her time at the company.

## Discussion

Summary judgment is proper where there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Nicholson v. City of Peoria*, 860 F.3d 520, 522 (7th Cir. 2017). In assessing a motion for summary judgment, a court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017). Nevertheless, "reasonable inferences" must be supported by more than "speculation and conjecture." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (citation omitted). "[A] genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.*

---

[1] Johnson previously appeared as an attorney in this case. The Court granted his motion to withdraw given his role as a witness. See dkt. no. 14.

Title VII of the Civil Rights Act of 1964 forbids employers from discriminating against employees based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit clarified that the proper way for a court to assess a motion for summary judgment on an employment discrimination claim is to ask whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's [protected characteristic] caused the discharge or adverse employment action." *Id.* at 765. In making this assessment, however, courts may still apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate evidence of causation in employment discrimination cases. *Ortiz*, 834 F.3d at 766. Following the parties' lead, the Court will structure its analysis according to the *McDonnell Douglas* framework.

The parties each spend significant space addressing the validity and effect of the settlement agreement Kelly signed in June 2016. In particular, they disagree about whether a clause releasing the claims in the January 2016 EEOC charge forecloses Kelly from using of the facts underlying those claims to support this suit. Because it has no effect on the outcome, the Court assumes without deciding that the clause was unenforceable—i.e., that Kelly could have used evidence underlying her first EEOC charge to support the claims at issue here.

**A.  Disparate treatment (count 1)**

Reading her submissions liberally, Kelly makes three arguments about disparate

treatment.[2]  First, in the only theory clearly articulated in her brief, Kelly argues that ISI's sexual harassment policies were unevenly enforced against her on the basis of her sex, leading to her termination.  Specifically, Kelly asserts that she was disciplined and eventually terminated for sexual harassment while similarly situated male employees were only reprimanded and were not fired.  Second, Kelly's supporting documents can be read to allege that she was deprived of a promotion to the consulting services director position based on her gender.  Third, Kelly's papers can be construed to allege that she was given less favorable work opportunities than male peers for the same reason.

To sustain a claim on any of her theories under *McDonnell Douglas*, Kelly must first establish a prima facie case of discrimination.  To survive summary judgment, Kelly must set forth evidence from which a reasonable jury could find that "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff."  *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (internal quotation marks omitted) (alteration in original); *see also Jaburek*, 813 F.3d at 631 (articulating the slightly modified standard specific to failure-to-promote

---

[2] The Court notes that Kelly articulates only one of these theories (wrongful termination) in the argument section of her brief, and even then only perfunctorily.  The other two arguments appear in the background section (less favorable work opportunities) and in a response to ISI's Local Rule 56.1 statement of undisputed material facts (failure to promote).  The Court will nevertheless address these arguments because, even if Kelly had presented them in her brief, they would fail on summary judgment.  Plaintiff's counsel should refamiliarize himself with the appropriate use of a Local Rule 56.1 statement as well as Chief Judge Castillo's advice on the Rule's application in *Malec v. Sanford*, 191 F.R.D. 581, 583-87 (N.D. Ill. 2000).

5

claims).

Under the burden-shifting method of proof, once the employee has established a prima facie case, the burden shifts to the employer to articulate a "legitimate non-discriminatory reason for its action." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013). The burden then shifts back to the plaintiff to point to evidence showing that the employer's proffered explanations are pretextual. *Id.* This requires the employee to show that the proffered reasons are phony, not merely mistaken. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993).

ISI argues that Kelly has not made out a prima facie case of discrimination. It contends that she cannot show that she met legitimate expectations and that she has not identified sufficiently similar comparators who were treated better than she was. Specific to the failure-to-promote claim, ISI argues that Kelly never actually asked for a promotion during the relevant timeframe. Alternatively, ISI proffers nondiscriminatory reasons for each of the adverse employment actions Kelly alleges.

The Court concludes that even assuming Kelly has made out a prima facie case on each of her three theories, she has failed to produce evidence from which a reasonable jury could find that ISI's reasons were pretextual.

1.  **Termination**

The only theory of disparate treatment Kelly actually argues in her brief concerns her termination. Specifically, she says that when she was terminated for allegedly sexually harassing three of her colleagues, she was treated differently from similarly situated male employees. She points to two men, Richard Belcher and Peter Napoli,

6

who she says she accused of sexually harassing her in the months before she was terminated but who were not fired for their misdeeds. She asserts, with little analysis, that ISI's explanation for her dismissal was therefore pretextual. In support of this conclusion, Kelly points only to the fact that Belcher—one of the men she accused—notarized the affidavits of witnesses to her alleged assault provided in support of ISI's motion for summary judgment.

The limited analysis in Kelly's brief includes no discussion of evidence from which a reasonable jury could conclude that the proffered explanation is pretextual. ISI points to the deposition testimony of Gibson, the human resources official, about why Kelly was terminated. According to Gibson, he got three complaints—from Chung, Lenius, and Johnson—that they had been groped, touched, and otherwise subjected to unwanted sexual behavior by Kelly. Upon investigation, Gibson found that several witnesses corroborated their accounts—in contrast, he says, with Kelly's allegations against Napoli and Belcher. And, importantly to Gibson, Kelly could not explain the allegations against her beyond saying that "she was having fun." Gibson Dep., Ex. 13 to Pl.'s Rule 56.1 Stat., dkt. no. 36-13, at 57. (Although she now denies that the harassment occurred, Kelly does not deny that she initially gave Gibson answers that were at best ambiguous to questions about the evening of the alleged harassment.) Gibson therefore recommended to Burgess, ISI's owner and managing director, that Kelly should be fired. Burgess accepted his recommendation.

To survive summary judgment, Kelly bears the burden of producing evidence from which a reasonable jury could conclude that the reason ISI gave for her firing—her alleged sexual harassment of three colleagues—was phony. *See St. Mary's Honor Ctr.*,

7

509 U.S. at 521. But Kelly has failed to produce *any* relevant evidence from which to infer that Gibson—and, ultimately, Burgess—knew she had not conducted herself as accused by Chung, Lenius, and Johnson but fired her anyway. At bottom, her argument reduces to the proposition that a factfinder could reasonably infer from Belcher's role as a notary of the various witnesses' affidavits that they each gave false statements under oath against her about this incident *and* that Gibson and Burgess knew those statements to be false when making the termination decision. That inference is not reasonable, and summary judgment is therefore appropriate.

2.    **Failure to promote**

Construed generously, Kelly's papers can be read to contend that less-qualified men were promoted to consulting services director positions while she was relegated to the senior project manager role. ISI says that one of the men, Sami Mizrahi, was not actually promoted and that the other two, Joe Welsh and Tom Dupree, were promoted over Kelly because they were uniquely qualified for the position.

The failure-to-promote theory cannot survive summary judgment. Kelly has not presented evidence sufficient to permit a reasonable jury to find that ISI's proffered reasons for promoting male candidates were pretextual. According to ISI, the first of the men, Mizrahi, was not actually promoted to a permanent consulting services director position but rather served as an interim director for a four-month period. Kelly offers no evidence to counter that explanation. Second, ISI says it promoted Welsh to a consulting services director position because he had experience in ISI's survey department that it hoped would enable him to improve communication between the departments. Again, Kelly does not rebut the explanation.

The third alleged comparator is Tom Dupree. ISI argues that this promotion is immaterial because it served as a basis for Kelly's first EEOC charge and was therefore subject to the full release that Kelly executed when she settled those claims. But, even if one assumes that the release was ineffective, Kelly has failed to provide evidence that would permit a finding that ISI's reason for promoting Dupree was pretextual. ISI suggests that it promoted Dupree because he was a rising star and among the top senior business consultants at the company. Although Kelly asserts that Dupree was ranked below her according to ISI's internal ranking system, she has produced no evidence supporting this contention beyond her own conclusory assertions in a recent affidavit. She has not, for instance, introduced the internal ranking report itself. And, more fundamentally, she has not produced any evidence that a higher ranking would have entitled her to the consulting services director position. Indeed, as discussed below, Kelly herself argues that the ranking system was subject to manipulation and thus should not be the exclusive basis for promotion decisions—at least not her own. ISI appears to agree in part, stating that "performance standings were not the sole determinants of work assignments or promotions" and were considered as one of "a variety of factors" in a promotion decision. Def.'s Reply Br., dkt. no. 42, at 8. In this case, it suggests that other factors—such as Dupree's quick rise and potential for continued growth—led it to promote him. Kelly does not even attempt to rebut that contention.

Even drawing inferences in her favor, the Court concludes that Kelly has not adduced evidence that would support a reasonable jury finding that Mizrahi, Welsh, or Dupree were promoted over her because of her gender.

9

### 3. Work opportunities

Kelly also argues that she was deprived of lucrative work projects by ISI in an effort to hurt her ranking in an internal performance tracker. ISI counters that the internal ranking system upon which work assignments are based is objective.

As with the failure-to-promote theory, Kelly's assertion is unsupported by the record. Although she spends several pages of her brief explaining how she believes ISI's internal ranking system could be manipulated to favor some employees over others, she offers no evidence probative of her contention that *her* ranking was manipulated. Rather, all she has offered is her own conclusion that she was deprived of at least eleven tax consulting jobs. ISI offers a non-discriminatory explanation for assigning other project managers to these jobs. Specifically, ISI asserts that Kelly had the same shot at consulting jobs as any other similarly ranked senior project manager and that projects were assigned according to a standard assignment protocol, which considered formula-based rankings and the consulting client's needs. Kelly entirely fails to address the question of pretext in her argument on this issue.

Again, Kelly's failure to adduce evidence supporting her assertions is fatal to her claim. Even drawing all reasonable inferences in her favor, she has not pointed to evidence from which a reasonable jury could conclude that ISI's explanation for her allegedly unfavorable work assignments was pretextual.

Each of the three theories of disparate treatment that the Court was able to divine from Kelly's papers fails for lack of evidence. "[A] genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Brown*, 700 F.3d at 1104 (citation omitted). No such

evidence exists here. The Court therefore grants summary judgment in favor of ISI on count 1, Kelly's claim of disparate treatment.

## B. Retaliation (counts 2 and 3)

In counts 2 and 3 of her first amended complaint, Kelly asserts claims of retaliation. Kelly says she was denied a promotion (count 2) and eventually fired (count 3) in retaliation for filing two EEOC charges. To prevail on either claim, she must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d at 679. ISI concedes that making complaints to the EEOC constituted protected activity but argues that Kelly has failed to meet either the second or third requirements.

The Court concludes that even if Kelly satisfied the first and second elements, she has not produced evidence of causation that would permit her claims to survive summary judgment. Kelly argues that evidence of timing is alone sufficient support a reasonable inference of causation. But she cannot sustain that position in the present circumstances. In support of her assertion, Kelly cites cases involving adverse employment actions that "took place on the heels of a protected activity," *Spiegla v. Hill*, 371 F.3d 928, 943 (7th Cir. 2004) (internal quotations omitted), without contextualizing what "on the heels" meant in those cases. In *Spiegla*, for instance, only *four days* passed between the protected activity and the alleged adverse employment action. Likewise, in *Lang v. Illinois Department of Children and Family Services*, 361 F.3d 416, 419 (7th Cir. 2004), the Seventh Circuit cautioned that "a short period of time between the filing of a charge of discrimination and an allegedly retaliatory action is rarely

enough by itself to create a triable issue," but "may permit a plaintiff to survive summary judgment *provided that there is also other evidence* that supports the inference of a causal link." *Lang*, 361 F.3d at 419 (emphasis added). More recently, the Seventh Circuit stated that "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Turner*, 595 F.3d at 687.

Assuming that evidence of close timing alone may sometimes suffice to permit a reasonable evidence of causation, Kelly has failed to identify any such evidence. Kelly says that she was denied a promotion and was ultimately fired because of her September 2016 EEOC charge. But she was terminated in March 2017, more than five months after the complaint and, as discussed above, after significant intervening events. That gap is simply too long to support an inference of causation. *See id.* at 690 (finding a two-month gap was too long to support an inference); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (finding a seven-week gap was too long to support an inference).

Likewise, Kelly's failure-to-promote claim is based on events with little temporal proximity to her protected actions. Dupree was promoted in January 2016 *before* Kelly filed an EEOC charge; his promotion, in fact, was part of the basis for that complaint. Mizrahi was allegedly promoted in July 2016, more than six months after the first charge. And Welsh was promoted to the director of consulting services position in February 2017, more than four months after Kelly's second charge. None of these alleged failures to promote can fairly be characterized as having come on the heels of a protected action.

In sum, the retaliation claims fail for much the same reason the disparate

treatment count did: Kelly failed to build a record that "would permit a reasonable factfinder to conclude that the plaintiff's [protected characteristic] caused the discharge or adverse employment action." *Ortiz*, 834 F.3d at 765.

**Conclusion**

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [dkt. no. 28] and directs the Clerk to enter judgment in favor of defendant and against plaintiff.

```
                                          _____
                                                  MATTHEW F. KENNELLY
                                                  United States District Judge
```

Date: February 4, 2019